UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KIMBERLY VANAUKEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:21-CV-00268-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *Kilolo Kijakazi, Acting* | ) |
| *Commissioner,* | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Kimberly VanAuken appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

### I.  FACTUAL AND PROCEDURAL HISTORY

VanAuken applied for DIB in May 2016, alleging disability as of April 22, 2016.[1] (ECF 12 Administrative Record ("AR") 160, 571). VanAuken's claim was denied initially and upon reconsideration. (AR 16, 78-79, 571). On October 30, 2017, administrative law judge ("ALJ") Genevieve Adamo conducted an administrative hearing at which VanAuken, who was represented by counsel; VanAuken's husband; and vocational expert ("VE") Charles McBee testified. (AR 36-67). On March 21, 2018, the ALJ rendered an unfavorable decision to VanAuken, concluding that she was not disabled because she could perform a significant number

---

[1] The ALJ consolidated VanAuken's application with a subsequent application she filed in April 2020. (AR 571, 833).

of unskilled sedentary jobs in the national economy despite the limitations caused by her impairments.  (AR 16-29).  The Appeals Council denied VanAuken's request for review (AR 1-7), at which point the ALJ's decision became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981.  VanAuken filed a civil action on May 6, 2019, No. 1:19-cv-00199-PPS-JEM, and on July 15, 2020, this Court remanded the case to the Commissioner for further proceedings.  (AR 666-76).

On remand, the ALJ conducted a new hearing on January 8, 2021, at which VanAuken, who was represented by an attorney; a medical expert; and VE Sarah E. Holmes testified.  (AR 600-32).  On March 17, 2021, the ALJ rendered another unfavorable decision to VanAuken, concluding that she was not disabled because she could perform a significant number of unskilled sedentary jobs in the national economy despite the limitations caused by her impairments.  (AR 571-91).  When that decision became final, VanAuken filed a second civil action with this Court on July 14, 2021, seeking relief from the Commissioner's March 2021 decision.  (ECF 1).  In her opening brief, VanAuken contends that the ALJ's step-five finding is not supported by substantial evidence because the ALJ failed to identify a significant number of jobs that she could perform despite her impairments.  (ECF 17 at 7).  The Commissioner timely file a response brief in opposition to VanAuken's arguments.  (ECF 18).  VanAuken, however, failed to file a reply brief, and her time to do so has now passed.  (ECF 16).

At the time of the ALJ's most recent decision, VanAuken was forty-eight years old (AR 160), had a high school education (AR 195), and had past relevant work experience as a cook (AR 589, 861).  She alleges disability due to spondylolisthesis, diabetes, depression, anxiety, hypertension, osteoarthritis, hypothyroidism, and high cholesterol.  (AR 860).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III.  ANALYSIS

### *A.  The Law*

Under the Act, a claimant seeking DIB must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

3

impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether she is incapable of performing any work in the national economy.[2] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

On March 21, 2018, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 571-91). At step one, the ALJ concluded that VanAuken had not engaged in

---

[2] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

4

substantial gainful activity after her alleged onset day of April 22, 2016. (AR 574). At step two, the ALJ found that VanAuken had the following severe impairments: obesity, lumbar degenerative disc disease, diabetes mellitus, failed back surgical syndrome, osteoarthritis in the knees and hips, and peripheral neuropathy. (*Id.*). At step three, the ALJ concluded that VanAuken did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 577).

    The ALJ assigned VanAuken the following RFC:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs, balancing, and stooping; never kneeling, crouching, or crawling; occasionally lifting and/or carrying 10 pounds, frequently less than 10 pounds; stand and/or walk for two hours; sit for six hours; requires the option to stand after 30 minutes sitting for a position change; must avoid exposure to hazards such as dangerous machinery with moving mechanical parts, unprotected heights and slippery or uneven surfaces except for the occasional climbing of ramps and stairs; can perform occasional overhead reaching; can perform work requiring simple instructions and routine, repetitive tasks, defined as tasks and instructions that can be learned through short demonstration, up to and including one month; cannot perform work requiring a specific production rate, such as assembly-line work; can meet production requirements that allow a flexible and goal-oriented pace; can maintain the focus, persistence, concentration, pace and attention to engage in such tasks for two-hour increments, for eight-hour workdays, within the confines of normal work breaks and lunch periods; can make simple work-related decisions; could respond appropriately to predictable, routine changes in the workplace.

(AR 578-79). Given the foregoing RFC, the ALJ found at step four that VanAuken could not perform her past relevant work. (AR 589). At step five, however, the ALJ concluded that VanAuken could perform a significant number of unskilled sedentary jobs in the national economy, including document preparer, final assembler, and inspector. (AR 590). Therefore, VanAuken's DIB application was denied. (AR 591).

5

*C. The ALJ's Step-Five Determination*

In her sole argument on appeal, VanAuken challenges the ALJ's step-five determination. (ECF 17 at 11-15). As already explained, a plaintiff seeking DIB bears the burden of proof at steps one through four of the ALJ's sequential five-part inquiry; the burden then shifts to the Commissioner at step five. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). At this final step, the Commissioner must establish that the plaintiff's RFC allows her to engage in work found in "significant numbers" in the national economy. *Liskowitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009); *see* 20 C.F.R. § 404.1566.

VanAuken argues that the ALJ failed to carry the Commissioner's burden to identify a significant number of jobs in the national economy that she is capable of performing despite the limitations caused by her impairments. (ECF 17 at 11-15). The ALJ concluded at step five that VanAuken was not disabled based on the VE's testimony that a hypothetical individual of VanAuken's age, education, work experience, and RFC could still perform a significant number of unskilled sedentary jobs in the national economy. (AR 590-91). Specifically, the VE testified that such individual could perform the following representative jobs: document preparer, 19,000 jobs in the national economy; final assembler, 7,800 jobs in the national economy; and inspector, 9,000 jobs in the national economy. (AR 627; *see also* AR 590). VanAuken contends that the ALJ failed to carry her step-five burden because the total number of representative jobs cited by the VE—35,800 jobs nationally—accounts for just .0328% of the 150,031,000 total jobs in the national economy. (ECF 17 at 11-13 (citing *Sally S. v. Berryhill*, No. 2:18cv460, 2019 WL 3335033, at *11 (N.D. Ind. July 23, 2019))).

"The Seventh Circuit [Court of Appeals] has not affirmatively established the threshold for

6

the number of jobs in the national economy that qualifies as significant." *John C. v. Saul*, No. 4:19-cv-04111-SLD-JEH, 2021 WL 794780, at *5 (C.D. Ill. Mar. 2, 2021). In *Weatherbee v. Astrue*, the Seventh Circuit found that 140,000 representative jobs in the national economy was "well above the threshold for significance," yet did not definitively identify an actual threshold. 649 F.3d 565, 572 (7th Cir. 2011); *see also Angela L. v. Saul*, No. 1:20-cv-00481-SEB-DML, 2021 WL 2843207, at *5 (S.D. Ind. July 7, 2021); *John C.*, 2021 WL 794780, at *5. In *Primm v. Saul*, the Seventh Circuit found that 110,000 jobs in the national economy was a significant number. 789 F. App'x 539, 546 (7th Cir. 2019). Also, in *Collins v. Berryhill*, the Seventh Circuit found that just 55,000 jobs was a significant number of jobs nationally. 743 F. App'x 21, 25-26 (7th Cir. 2018). And more recently, the Seventh Circuit commented in *Mitchell v. Kijakazi* that 30,000 jobs was a significant number nationally. No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. 2021).

But the *Primm* court relied on *Liskowitz*, a case involving regional, rather than national, numbers. *Primm*, 789 F. App'x at 546; *see Liskowitz*, 559 F.3d at 743 (finding that 4,000 jobs in the Milwaukee area was a significant number, and commenting that "it appears to be well-established that 1,000 jobs is a significant number" (collecting cases)). The *Collins* court, indirectly, did as well. 743 F. App'x at 25-26 (relying on *Brown v. Colvin*, 845 F.3d 247, 255 (7th Cir. 2016), which in turn relied on *Liskowitz*). The same occurred in *Mitchell*. 2021 WL 3086194, at *3 (citing *Weatherbee*, 649 F.3d at 572, which in turn relied on *Liskowitz*, 559 F.3d at 743). Some district judges have concluded that "reliance on *Liskowitz*'s regional threshold is . . . suspect (and, by extension, so is the reliance on *Primm*)" when considering a claimant's argument challenging the number of national jobs identified. *James A. v. Saul*, 471 F. Supp. 3d

7

856, 859-60 (N.D. Ind. July 10, 2020). Therefore, while *Primm, Collins,* and *Mitchell* provide some guidance, they are not without vulnerability. *See Engel v. Kijakazi*, No. 20-CV-1206-SCD, 2021 WL 4843871, at *11 (E.D. Wis. Oct. 18, 2021) (collecting cases) ("Engel and other courts have accused the Seventh Circuit of misapplying *Liskowitz* in cases (like *Mitchell*, *Weatherbee*, and *Primm*) involving national numbers.  That's possible . . . .  More likely, though, it appears from the Seventh Circuit's interpretation of its own prior holding in *Liskowitz* that 1,000 jobs nationally can be a significant number of jobs.").

"[D]istrict courts within the circuit—applying national numbers—have found as many as 120,350 jobs to not meet the burden, and as few as 17,700 jobs to be significant." *Angela L.*, 2021 WL 2843207, at *5 (citing *John C.*, 2021 WL 794780, at *5); *compare Sally S.*, 2019 WL 3335033, at *11 (120,350 jobs nationally is not a significant number), *with Dorothy B. v. Berryhill*, No. 18 CV 50017, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019) (17,700 jobs nationally is a significant number).  Thus, this circuit lacks definitive guidance on what constitutes a "significant number" of jobs in the national economy.  *See Sundsmo v. Saul*, No. 20-cv-100-wmc, 2020 WL 6817112, at *7 (W.D. Wis. Nov. 20, 2020) (concluding 67,327 jobs nationally was a significant number, observing that "this court has no ready guidance, other than to note that the ALJ's reliance of evidence of jobs in the national economy in the tens of thousands to find the claimant capable of full-time work appears consistent with decades of case law and the applicable regulations . . . ."); *see also Ellis v Kijakazi*, No. 20-CV-719, 2021 WL 3514701, at *5 (E.D. Wis. Aug. 9, 2021) (observing the "lack of clarity from the Seventh Circuit regarding . . . 'significant numbers'" when concluding that 14,500 nationally was not a significant number).

8

The undersigned Magistrate Judge faced a similar argument last year in *Knapp v. Saul*, No. 1:20-cv-00011-PPS-SLC, 2021 WL 536121, at *4-5 (N.D. Ind. Jan. 27, 2021), *R. & R. adopted by* 2021 WL 536483 (N.D. Ind. Feb. 12, 2021). There, I rejected the claimant's argument that 120,000 jobs nationally was not a significant number. *Id.* In doing so, I commented that "even when considering just the three jobs identified by the VE, the ALJ provided a sufficient number of jobs through his identification of 29,000 polishing machine operator jobs, 22,000 sorting machine operator jobs, and 16,500 wire insulator jobs." *Id.* at *4. Thus, at least in the facts presented in *Knapp* and under the law at the time, I viewed that 67,500 jobs in the national economy would still be a significant number of jobs. *Id.*; *see also Sundsmo*, 2020 WL 6817112, at *7 (finding that 67,327 jobs nationally was a significant number of jobs); *Angela L.*, 2021 WL 2843207, at *6 (finding that 53,200 jobs nationally was a significant number of jobs). And more recently, I have found as few as 37,700 jobs nationally to be a significant number of jobs. *See Levitz v. Comm'r of Soc. Sec.*, No. 1:20-cv-00407-SLC, 2022 WL 110239, at *4-5 (N.D. Ind. Jan. 12, 2022; *see also Zych v. Comm'r of Soc. Sec.*, No. 1:20-cv-00414-SLC, 2021 WL 5319880, at *5 (N.D. Ind. Nov. 15, 2021) (finding 41,000 jobs nationally was a significant number of jobs)*, appeal docketed*, No. 22-1058 (7th Cir. Jan. 13, 2022).

Here, the number of representative jobs cited by the ALJ is slightly less than that—35,800. In the absence of Seventh Circuit controlling precedent on the matter, district courts in this circuit have turned to other circuits for guidance. *See, e.g.*, *Wildenberg v. Kijakazi*, No. 20-cv-297-bbc, 2021 WL 4077498, at *7 (W.D. Wis. Sept. 8, 2021); *Ducharme v. Saul*, No. 20-cv-356-bbc, 2021 WL 1711787, at *5 (W.D. Wis. Apr. 30, 2021), *appeal docketed*, No. 21-2204 (7th Cir. June 28, 2021); *Marko L. v. Saul*, No. 16 C 9723, 2021 WL 843427, at *7 (N.D. Ill. Mar. 5,

9

2021).  As the Commissioner emphasizes, the Third, Sixth, and Eighth Circuits have all found that much fewer than 35,800 jobs is a significant number of jobs in the national economy.  (ECF 18 at 8-9); *see Sanchez v. Comm'r of Soc. Sec.*, 705 F. App'x 95, 99 (3d Cir. 2017) (finding 18,000 jobs in the national economy significant); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (finding 6,000 jobs in the national economy significant); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (finding 25,000 jobs in the national economy significant); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (finding 10,000 jobs in the national economy significant).

And to the extent that VanAuken relies on the *Sally S.* decision finding that 120,350 jobs was not a significant number nationally, 2019 WL 3335033 at *11, that same district judge recently found in another case that just 50,566 jobs was a significant number of jobs nationally. *See Rhonda F. v. Kijakazi*, No. 3:21cv254, 2022 WL 292738, at *7 (N.D. Ind. Feb. 1, 2022).  Further, several district courts in this circuit have found fewer than 35,800 jobs to be a significant number.  *See, e.g.*, *Ducharme*, 2021 WL 1711787, at *5 (finding 31,000 jobs in the national economy significant); *Wildenberg*, 2021 WL 4077498, at *7 (finding 33,000 jobs in the national economy significant); *Iversen v. Berryhill*, No. 16 CV 7337, 2017 WL 1848478, at *5 (N.D. Ill. May 8, 2017) (finding 30,000 jobs in the national economy significant); *Simcoe v. Colvin*, No. 1:14-cv-01488-SEB-MJD, 2015 WL 3960964, at *5 (S.D. Ind. June 29, 2015) (commenting that 32,000 jobs nationally was likely a significant number).

Given the foregoing persuasive authority, and the lack of definitive guidance in this circuit as to what constitutes a significant number of jobs, I conclude that 35,800 jobs in the national economy is a "significant number" of jobs for purposes of the ALJ's step-five determination in

this case.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.  The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against VanAuken.

SO ORDERED.

Entered this 8th day of March 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge